1

Megan Beaman (SBN 261539)
        megan@beaman-law.com

2

Curtis Davis (SBN 323353)

3

        curtis@beaman-law.com

**BEAMAN JACINTO LAW, P.C.**

4

77564 Country Club Dr. Suite 340
Palm Desert, CA 92211

5

T: (760) 698-9626

6

7

Attorneys for Plaintiff

8

CHRIS OPPENHEIMER

9

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

10

### FOR THE COUNTY OF RIVERSIDE

11

12

| | |
|---|---|
| CHRIS OPPENHEIMER, | Case No.: CVPS2305408 |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| vs. | 1. **RETALIATION FOR EXERCISE OF RIGHTS** |
| CITY OF COACHELLA; and DOES 1 through 10, inclusive, | 2. **POLITICAL ACTIVITIES RETALIATION** |
| Defendants. | 3. **DISABILITY DISCRIMINATION** |
| | 4. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS** |
| | 5. **FAILURE TO REASONABLY ACCOMMODATE** |
| | 6. **RETALIATION FOR REQUEST OF REASONABLE ACCOMODATION** |
| | 7. **RETALIATION FOR OPPOSITION TO DISCRIMINATION** |
| | 8. **FAILURE TO PREVENT DISCRIMINATION** |
| | 9. **HARASSMENT** |
| | 10. **FAILURE TO PAY OVERTIME WAGES** |
| | 11. **VIOLATION OF RIGHT TO PRIVACY** |
| | **DEMAND FOR TRIAL BY JURY** |

-1-

## **NATURE OF THE ACTION**

1. This is an action brought by an employee, CHRIS OPPENHEIMER ("Mr. Oppenheimer") against his employer, Defendant CITY OF COACHELLA, and DOES 1 through 10, inclusive, under applicable California and federal law.

2. Defendants have retaliated and continue to retaliate against Mr. Oppenheimer in his employment due to his protected activities, including his reports of unlawful operations of businesses, personal support of political candidates, demands to be paid for all hours worked, and opposition to harassment and discrimination. Defendants moreover failed to accommodate Mr. Oppenheimer's disabilities on multiple occasions and have retaliated against him due to his requests for reasonable accommodation. Defendants' discriminatory and retaliatory conduct has caused and continues causing substantial and potentially irreparable emotional damage and damage to Mr. Oppenheimer's professional reputation as a building inspector. Additionally, Defendants altogether failed to pay Mr. Oppenheimer's wages for certain overtime hours worked during his employment.

## **ADMINISTRATIVE EXHAUSTION**

3. Plaintiff provided timely and complete notice of government claims to Defendant City of Coachella on April 24, 2023. City of Coachella officially rejected the claims on June 9, 2023.

4. Plaintiff provided timely and complete second notice of government claims to Defendant City of Coachella on November 1, 2023. As of the date of this filing, Plaintiff's second government claim remains pending and it is expected that the City of Coachella will reject it.

5. Plaintiff provided a timely and complete third notice of government claims to Defendant City of Coachella on November 14, 2023. As of the date of this filing, Plaintiff's third government claim remains pending and it is expected that the City of Coachella will reject it.

6. Plaintiff filed a timely complaint of discrimination and retaliation with the California Civil Rights Department and requested and received a right to sue letter that same day, prior to the filing of this action.

SECOND AMENDED COMPLAINT FOR DAMAGES

EXHIBIT A - 2

### THE PARTIES

7.  Plaintiff CHRIS OPPENHEIMER was at all relevant times mentioned herein a resident of the County of Riverside.

8.  Defendant CITY OF COACHELLA was at all times mentioned herein a public entity located and operating in the County of Riverside, and is and was the employer of Plaintiff Mr. Oppenheimer under applicable laws.

9.  The true names and capacities, whether individual, corporate, associate or otherwise of defendants DOES 1-10 are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a DOE is responsible in some manner for negligence, willful misconduct, strict liability, and dangerous conditions, infliction of emotional distress, and other occurrences as alleged herein, which directly and proximately caused the injuries and damages alleged in this complaint. Plaintiff will amend this complaint to allege the true names and capacities of said defendant DOES when the same are ascertained.

10. All the acts and conduct herein below described of each and every defendant was duly authorized, ordered and directed by the respective and collective defendants, and the officers, trustees, directors, agents, and/or management-level employees of said defendants. In addition thereto, all defendants participated in the aforementioned acts and conduct of their said employees, agents and representatives and each of them; and upon completion of the aforesaid acts and conduct of said employees, agents and representatives, the defendants respectively and collectively, ratified, accepted the benefits of, condoned, lauded, acquiesced and approved of each and all of the said acts and conduct of the aforesaid employees, agents and representatives.

11. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each defendant was the agent, servant and employee of each of the remaining defendants, and that in doing the things herein alleged said defendants were acting within the course and scope of said agency, service and employment. Additionally, plaintiff is informed and believes and thereon alleges that at all times relevant herein alleged each defendant was acting pursuant to the custom and policy of defendants, and that the acts and conduct of defendants alleged herein were

EXHIBIT A - 3

1
2

authorized, ratified, and/or approved by defendants and its agents and employees vested with the authority to exercise final decision-making authority for defendants.

3
4

## **FACTUAL ALLEGATIONS**

5
6

12. Plaintiff Chris Oppenheimer is a building inspector with years of experience and outstanding performance.

7
8

13. Defendant City of Coachella first hired Mr. Oppenheimer in November 2019 to the position of Building Inspector II.

9
10
11
12
13
14

14. Mr. Oppenheimer has performed the responsibilities and duties of his position for the City well for the entire duration of his employment. The job required him to work full time on a modified Monday through Thursday schedule, ten hours per day, with occasional additional overtime work on Fridays. The job did not require any weekend work. Part of Mr. Oppenheimer's work was paid indirectly by developers, who reimbursed the city for his hours spent, plus administrative fees.

15
16

15. In approximately July 2021, Gabriel Perez was hired to the position of Development Services Director, becoming Mr. Oppenheimer's new supervisor.

17
18
19

16. On multiple occasions from approximately January 2022 to present, Perez deleted, removed, disapproved, and/or otherwise caused the non-payment of hours that Mr. Oppenheimer worked. The hours deleted were worked beyond 40 in a week and thus constituted overtime hours.

20
21

17. This conduct continued even after Mr. Oppenheimer reported it to Perez's supervisor, City Manager Gabriel Martin, and Martin reprimanded Perez.

22
23
24
25
26

18. In approximately mid- 2022, Mr. Oppenheimer was made aware that a Building Official position would soon be open. The Building Official position was elevated from Mr. Oppenheimer's current position and would constitute a promotion. Mr. Oppenheimer was and is qualified for the position and was excited for the opportunity to grow in his employment with the City.

27

19. Mr. Oppenheimer applied to the position on or about August 31, 2022.

28

-4-

20. City Manager Gabriel Martin in approximately August or September 2022 told Mr. Oppenheimer that the Building Official position was already waiting for him, and that he just needed to go through the formalities.

21. Councilmember Neftali Galarza and Mayor Steven Hernandez also both separately told Mr. Oppenheimer that the position was "his," notifying him even when it was approved by the City Council for posting.

22. In approximately September 2022, Ruben Gonzalez—property owner, city Planning Commissioner, brother of then-Councilmember Josie Gonzalez, and brother to the former Mayor Jesus Gonzalez—told Mr. Oppenheimer that he had advocated for Perez to be hired, and that he would discuss Mr. Oppenheimer's interest in the Building Official position with Perez.

23. Shortly after, Jesus Gonzalez—property owner, former city Mayor, brother to then-city Councilmember Josie Gonzalez—made a similar comment to Mr. Oppenheimer.  Mr. Oppenheimer understood the comments to be implicit requests for his loyalty to Ruben Gonzalez and Jesus Gonzalez with regard to their property operations in the City of Coachella.

24. In approximately early October 2022, a photo began to circulate, which depicted Mr. Oppenheimer attending a political event on his personal time in support of the current mayor's political opponent.  City Manager Gabriel Martin approached Mr. Oppenheimer about the photo, telling him that a councilmember had sent it to Martin and that councilmembers were unhappy about it. Mr. Oppenheimer attempted to explain that he also attended fundraisers and events in support of the current mayor and other city representatives, but the explanation did not resolve Martin's concerns about the councilmembers' unhappiness.

25. In approximately November 2022, as part of his regular job duties and responsibilities, Mr. Oppenheimer reported to Perez that unpermitted building activity, such as the building of trenches, was occurring on a property operated by Ruben Gonzalez.  Perez seemingly ignored Mr. Oppenheimer's report.  Mr. Oppenheimer had previously reported to supervisors on at least one occasion that a cannabis dispensary owned by Jesus Gonzalez was operating without proper inspections completed, and without a Certificate of Occupancy.  Upon information and belief, no action was taken regarding these unlawful building activities.  Upon information and belief,

unpermitted building activities continued occurring on the properties continuously and/or from time to time, up to today.

26. Furthermore, or about November 8, 2022, Councilmember Neftali Galarza contacted Mr. Oppenheimer.  At the time, votes from the 2022 General Election were still being counted, including those cast in the very close race between two candidates for the position of Mayor to the City of Coachella.  Galarza is and was a known friend and supporter of city Mayor Steven Hernandez, who was one of the candidates on the ballot.

27. In this conversation, Galarza asked Mr. Oppenheimer if he was supporting Hernandez's opponent in the election.  Mr. Oppenheimer confirmed that he had donated to the opponent's campaign in his personal capacity.  Galarza indicated that he was upset and offended by Mr. Oppenheimer's personal political decisions. Galarza pushed Mr. Oppenheimer to call Hernandez to discuss the campaign donation that he made.

28. Hernandez ultimately won the position of Mayor for an additional two-year term, by a slim margin of 59 votes.

29. In November 2022 and thereafter—following his reports of unpermitted building activity and his conversations with Martin and Galarza, Mr. Oppenheimer observed and experienced an escalation in retaliatory conduct against him, causing him to feel that he was under a microscope, and that the City was attempting to force him to quit or to find an excuse to terminate him.

30. In approximately mid-November 2022, the Building Official position was posted for external candidates, signaling to Mr. Oppenheimer for the first time that the City may intend to pass over him for the position.  Mr. Oppenheimer was and is aware of several positions for which internal candidates were hired without any external posting.

31. When the City interviewed Mr. Oppenheimer for the Building Official position, the interview panel asked him irrelevant questions about types of building not currently being done in the city of Coachella, which appeared to be designed solely to cause him confusion.

32. The City thereafter hired an external candidate as Building Official, despite earlier assurances that Mr. Oppenheimer would be promoted to the position.

SECOND AMENDED COMPLAINT FOR DAMAGES

EXHIBIT A - 6

33. In approximately late February or early March 2023, Perez began to cut back on Mr. Oppenheimer's hours, causing him to lose significant overtime hours and pay. These hours cut included hours which are reimbursed by developers and create no cost to the city.

34. Mr. Oppenheimer furthermore overheard and/or learned from co-workers that Perez made disparaging comments about him on various occasions, with the apparent attempt to damage his reputation and relationships with co-workers and other professional contacts.

35. On approximately April 10, 2023, Mr. Oppenheimer's supervisors told him for the first time that Perez would now require Mr. Oppenheimer to complete a form regarding his part-time weekend work performing private home inspections, and that Perez would be empowered to deny Oppenheimer the ability to perform that private work on his own time. At the time he was interviewed and then hired in 2019, Mr. Oppenheimer disclosed his weekend inspection work to ensure that it would not present any conflict with the position. The City Manager and Development Services Director who interviewed him assured him that it would not, and he continued to perform that work occasionally on weekends after being hired. The weekend inspection work did not conflict with or interfere with his city job duties.

36. Moreover, Mr. Oppenheimer was and is aware that his direct supervisor, Lizzandro Diaz, provides his personal business card to developers even while on City time.

37. On April 24, 2023, Mr. Oppenheimer filed a government claim with the City of Coachella, reflecting the facts and incidents outlined in Paragraphs eight (8) through 31, herein.

38. Immediately following this filing, Mr. Oppenheimer once again experienced a noticeable escalation in retaliatory activity toward him, which continues virtually unabated up to today. Perez, Diaz, and even Martin began an all-out campaign against Mr. Oppenheimer, including harassing acts and adverse actions such as: ignoring him while greeting other employees; purposely excluding him from office activities (i.e. co-worker birthday celebrations, office excursion); excluding him from mass communications on which he was previously includes (i.e. SIRF reports); providing him with a false negative performance review; failing to implement his step increase; failing to accommodate his disability restrictions; assigning him to menial, demeaning, and/or unethical tasks; sharing his private health information with other employees;

SECOND AMENDED COMPLAINT FOR DAMAGES

EXHIBIT A - 7

monitoring his standing and sitting activities; reprimanding and humiliating him in front of other employees; and more.

39. By all accounts, the City was and is searching for a way to terminate Mr. Oppenheimer and/or force him to resign.

40. At times, the retaliation became so intolerable that Mr. Oppenheimer suffered extreme symptoms of anxiety and trauma, leading him to seek and receive medical care.  His physician ordered him on disability leave of absence briefly in July and August 2023 due to the impacts.

41. On or about July 20, 2023, Mr. Oppenheimer's doctor ordered him on modified duty due to his foot condition, which includes limitations on walking, standing, and climbing.  On July 24, 2023, Diaz emailed Mr. Oppenheimer regarding his modifications and the City's purported willingness to accommodate them at work.

42. However, Diaz in fact outwardly and intentionally violated Mr. Oppenheimer's work restrictions at every turn, while also increasing his assignment to menial, demeaning tasks. For example, Diaz assigned Mr. Oppenheimer to go through dozens of old building plans, some of which weighed over 20 pounds, lug them around the office, and review them to ensure whether they have been scanned into Laserfiche storage.  Diaz further refused to allow Mr. Oppenheimer to use the larger conference room space to review the unwieldy and heavy plan documents, forcing him to uncomfortably and tediously review them in his cramped office space—even though other staff are permitted to use the conference room on an ongoing basis.

43. On August 9, 2023, Diaz called Mr. Oppenheimer into his office in an aggressive manner, read Mr. Oppenheimer's entire job description to him, and, in reference to his work restrictions, asked him angrily what part of the job description he has a problem with.  Mr. Oppenheimer responded that he did not feel comfortable with the way Diaz was treating him and that he felt he was under a microscope.  Diaz responded that he did not care to talk about anything with Mr. Oppenheimer other than his alleged unwillingness to follow his job description.  Mr. Oppenheimer feared to discuss the matter any further with Diaz, and asked to have his attorney or a union representative present.

-8-

44. On August 11, 2023, Mr. Oppenheimer transmitted a letter to the City requesting that it immediately cease and desist retaliation, identifying many of the facts identified in Paragraphs 33 through 38 herein. Nonetheless, the conduct persisted.

45. On or about August 24, 2023, a former colleague contacted Mr. Oppenheimer to let him know that the City had been asking questions about him and his overtime work at the City.

46. On or about August 28, 2023, Mr. Oppenheimer learned from a City employee that the City director of human resources, Sandy Krause, had requested a report of the GPS from Mr. Oppenheimer's work truck for the last year. The employee told Mr. Oppenheimer that the reports only go back three months, and that he confirmed to Krause that there was nothing in the log out of the norm.

47. On September 11, 2023, during a period in which Mr. Oppenheimer's modified work order had expired while he awaited his follow-up appointment, Diaz brought Mr. Oppenheimer into his office and repeatedly questioned him about why he was unable to return to unrestricted work duties. Diaz asked the same questions several times, in a very condescending and accusatory fashion, while Mr. Oppenheimer repeatedly explained that his next doctor appointment was three days later, which was the soonest available, and that the modified duty should still apply because he was not physically able to work without restrictions. Diaz took notes, then asked Mr. Oppenheimer to leave the office.

48. On September 19, 2023, Krause and Diaz convened a purported meeting purported to discuss Mr. Oppenheimer's restrictions, which had been updated by a doctor's order of September 14, 2023 to require sedentary duties. In that meeting, Krause interrogated Mr. Oppenheimer about what he does at home and how he personally implements the sedentary work restriction at home. Krause also repeatedly assured Mr. Oppenheimer that his restrictions will be accommodated. Krause documented the meeting on September 20, 2023 in a purported summary which misrepresented key facts, including a reference to Diaz's aggressive August 9 meeting with Mr. Oppenheimer as a similar interactive process meeting.

49. Mr. Oppenheimer subsequently wrote an email to Krause, clarifying his experience of the August 9 meeting. This communication constituted a report or complaint of workplace

SECOND AMENDED COMPLAINT FOR DAMAGES

EXHIBIT A - 9

discrimination.  In response, Kraus apparently met with Diaz to extensively document his contentions regarding the August 9 meeting, then reported to Mr. Oppenheimer her adoption of Diaz's contentions as facts on October 11, 2023, once again disregarding and discrediting his report without any further investigation.

50. On or about October 30, 2023, Diaz called Mr. Oppenheimer into his office once again to present him with a series of pretextual criticisms, indicating that Diaz continued to look for any reason to isolate, discipline, and/or terminate Mr. Oppenheimer.  The meeting moreover revealed that Diaz had been stalking Mr. Oppenheimer's whereabouts via his city vehicle GPS (and finding no violations in so doing), even while Mr. Oppenheimer was on COVID19 sick leave.

51. On November 1, 2023, Mr. Oppenheimer stepped outside for a phone appointment from his medical provider.  When he returned to his desk, Diaz confronted and scolded him, saying that he did not want to see him standing or walking during work hours.  Even after Mr. Oppenheimer explained that he was on a call with his doctor, Diaz continued to scold him for standing and walking, in preposterous reference to Mr. Oppenheimer's sedentary work restriction.

52. Additionally, upon information and belief, Diaz on multiple occasions spoke to other City employees about Mr. Oppenheimer's doctor-ordered work restrictions and private medical information, even to those employees who had no need to know, and told employees in an aggressive and insulting way that Mr. Oppenheimer was not allowed to be seen standing, walking, or otherwise anywhere outside his seated work area.

53. Defendants' ongoing retaliation, harassment, and discrimination toward Mr. Oppenheimer has created substantial emotional and psychological impacts on him, driving him to seek and receive medical care and medication, triggering past trauma, and otherwise causing him substantial distress.  Defendants have rendered the environment hostile such that it would be intolerable to a reasonable person, and it is intolerable to Mr. Oppenheimer.

**FIRST CAUSE OF ACTION**
**RETALIATION FOR EXERCISE OF RIGHTS**
**Violation of Cal. Lab. Code § 1102.5(b), (d)**
**Against All Defendants**

54. Plaintiff incorporates herein each and every allegation contained in the above paragraphs, as if alleged fully herein.

55. California law prohibits employers and persons acting on behalf of employers from retaliating against an employee who has disclosed information that the employee had reasonable cause to believe constitutes a violation of the law.

56. Defendants' ongoing conduct toward Mr. Oppenheimer, as described herein, constitutes retaliation for exercise of these rights, in violation of California Labor Code section 1102.5(b) and/or 1102.5(d). Defendants' conduct was undertaken for the purpose and intent of retaliating against Plaintiff for his exercise of legally-protected rights.

57. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff has suffered special and general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

58. Plaintiff is additionally entitled to and seeks injunctive relief, declaratory relief, and attorney's fees as provided by law.

**SECOND CAUSE OF ACTION**
**POLITICAL ACTIVITIES RETALIATION**
**Violation of Cal. Govt. Code §§ 3203, 3204**
**Against All Defendants**

59. Plaintiff incorporates herein each and every allegation contained in the above paragraphs, as if alleged fully herein.

60. California law prohibits the placement of restriction on the personal political activities of any officer or employee of a state or local agency.

61. California law moreover prohibits any person seeking election to office in a state or local agency from directly or indirectly using authority or influence to obstruct or prevent any individual employee of that agency from securing any position, promotion, or change in

-11-

position within the agency, on the condition that the individual should support or not support any candidate.   The use of authority or influence prohibited by law includes the urging or discouraging of the individual employee's action.

62. Defendants' acts as described herein constitute restriction(s) on Plaintiff's political activities and retaliation for those activities, as prohibited by California law.

63. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff has suffered special and general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial.  Defendants' conduct was a substantial factor in causing Plaintiff's harm.

64. Plaintiff is additionally entitled to and seeks injunctive relief, declaratory relief, and attorney's fees as provided by law.

**THIRD CAUSE OF ACTION**
**Discrimination Based on Disability**
**in Violation of Cal. Gov't Code § 12940(a)** *et seq.*
**Against All Defendants**

65. Plaintiff re-alleges and incorporates each preceding paragraph of this complaint as if fully set forth in this paragraph.

66. California law as declared in the Fair Employment and Housing Act prohibits employment discrimination based on an employee's disability or the perception of his disability. Included in the definition of "disability" are certain serious medical conditions.

67. Defendant's adverse actions toward Plaintiff, including maltreatment, suspension, and termination of his employment, were motivated by Plaintiff's disabilities or perception of his disabilities and were not supported by any good or just cause, in violation of California Government Code section 12940(a).

68. Defendants' acts as herein described were committed maliciously, fraudulently, or oppressively with the intent of injuring Plaintiff, and/or in willful and conscious disregard of Plaintiff's rights to work in an environment free from unlawful discrimination.

-12-

69. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff suffered special and general damages in an amount in excess of the minimum jurisdiction of this court, to be determined according to proof at the time of trial.

70. Defendants' acts further entitle Plaintiff to a permanent injunction enjoining the Defendants from failing to provide a workplace free from discrimination based on disability.

71. Plaintiff requests attorney fee and costs against Defendants pursuant to California Government Code section 12965(b).

**FOURTH CAUSE OF ACTION**
**Failure to Engage in Good Faith Interactive Process**
**in Violation of Cal. Gov't. Code § 12940 et seq.**
**Against All Defendants**

72. Plaintiff re-alleges and incorporates each preceding paragraph of this complaint as if fully set forth in this paragraph.

73. Defendants were aware of Plaintiff's disabilities and/or perceived the disabilities, yet failed to engage in a good faith, interactive process with Plaintiff to determine effective reasonable accommodations for his disabilities during his employment, in violation of California Government Code section 12940(n).

74. Defendants' acts as herein described were committed maliciously, fraudulently, or oppressively with the intent of injuring Plaintiff, and/or in willful and conscious disregard of Plaintiff's rights to work in an environment free from unlawful discrimination.

75. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff has suffered special and general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial.

76. Defendants' acts further entitle Plaintiff to a permanent injunction enjoining the Defendants from failing to provide a workplace free from discrimination based on disability.

77. Plaintiff requests attorney fees and costs against Defendants pursuant to California Government Code section 12965(b).

-13-

**FIFTH CAUSE OF ACTION**
**Failure to Accommodate Disability**
**in Violation of Cal. Gov't. Code § 12940(m)**
**Against All Defendants**

78. Plaintiff re-alleges and incorporates each preceding paragraph of this complaint as if fully set forth in this paragraph.

79. Defendants were aware of Plaintiff's disabilities and/or perceived the disabilities, yet wrongfully and without good cause or justification denied reasonable accommodations that complied with his doctor-ordered restrictions, or alternatively short amounts of time off work to recuperate, all in violation of California Government Code section 12940(m).

80. Defendants' acts as herein described were committed maliciously, fraudulently, or oppressively with the intent of injuring Plaintiff, and/or in willful and conscious disregard of Plaintiff's rights to work in an environment free from unlawful discrimination.

81. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff has suffered special and general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial.

82. Defendants' acts further entitle Plaintiff to a permanent injunction enjoining the Defendants from failing to provide a workplace free from discrimination based on disability.

83. Plaintiff requests attorney fees and costs against Defendants pursuant to California Government Code section 12965(b).

**SIXTH CAUSE OF ACTION**
**Retaliation for Requesting Reasonable Accommodations**
**in Violation of Cal. Gov't. Code § 12940(m)**
**Against All Defendants**

84. Plaintiff re-alleges and incorporates each preceding paragraph of this complaint as if fully set forth in this paragraph.

85. Defendants were aware of Plaintiff's disabilities and/or perceived the disabilities, and were also aware of his requests for reasonable accommodations in the form of lighter work duties that complied with his doctor-ordered work restrictions, or alternatively short amounts of time off

-14-

work to recuperate. In retaliation for Plaintiff's requests for reasonable accommodations, Defendants engaged in increasingly retaliatory behavior toward him, which included the creation and maintenance of a hostile environment, isolation, unjustified criticism and reprimand, surveillance, disclosure of his private medical information, and more, all in violation of California Government Code section 12940(m).

86. Defendants' acts as herein described were committed maliciously, fraudulently, or oppressively with the intent of injuring Plaintiff, and/or in willful and conscious disregard of Plaintiff's rights to work in an environment free from unlawful discrimination.

87. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff has suffered special and general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial.

88. Defendants' acts further entitle Plaintiff to a permanent injunction enjoining the Defendants from failing to provide a workplace free from retaliation.

89. Plaintiff requests attorney fees and costs against Defendants pursuant to California Government Code section 12965(b).

### SEVENTH CAUSE OF ACTION
**Retaliation for Opposition to Discrimination and Harassment**
**In Violation of Cal. Gov't. Code § 12940(h)**
**Against all Defendants**

90. Plaintiff re-alleges and incorporates by reference each preceding paragraph of this complaint as if fully set forth in this paragraph.

91. Defendants, by the acts and omissions alleged above, retaliated against Plaintiff due to his opposition to discrimination in the workplace by, among other things, creating and maintaining a hostile environment, isolating him, unjustifiably criticizing and reprimanding him, surveilling him, disclosing his private medical information, and more, all in violation of Cal. Gov't Code § 12940(h).

-15-

92. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff has suffered special and general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial.

93. Defendants' acts as herein described were committed maliciously, fraudulently, or oppressively with the intent of injuring Plaintiff, and/or in willful and conscious disregard of Plaintiff's rights to work in an environment free from unlawful discrimination.

94. Defendants' acts further entitle Plaintiff to a permanent injunction enjoining the Defendants from failing to provide a workplace free from retaliation, discrimination, and harassment.

95. Plaintiff requests attorney fees and costs against Defendants pursuant to California Government Code section 12965(b).

**EIGHTH CAUSE OF ACTION**
**Failure to Prevent Discrimination**
**in Violation of Cal. Gov't. Code § 12940(k)**
**Against All Defendants**

96. Plaintiff re-alleges and incorporates each preceding paragraph of this complaint as if fully set forth in this paragraph.

97. During the course of Defendants' employment of Plaintiff, Defendants failed to prevent discrimination toward Plaintiff on the basis of his disability or disabilities, in violation of California Government Code section 12940(k).

98. As a direct, foreseeable, and proximate result of Defendants' wrongful acts, Plaintiff has suffered special and general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial.

99. Defendants' acts as herein described were committed maliciously, fraudulently, or oppressively with the intent of injuring Plaintiff, and/or in willful and conscious disregard of Plaintiff's rights to work in an environment free from unlawful discrimination.

100.     Defendants' acts entitle Plaintiff to a permanent injunction enjoining the Defendants from failing to prevent discrimination in the workplace.

-16-

101.     Plaintiff requests attorney fees and costs against Defendants pursuant to California Government Code section 12965(b)

**NINTH CAUSE OF ACTION**
**Harassment**
**In Violation of Cal. Gov. Code §§ 12923, 12940(j)**
**Against All Defendants**

102.     Plaintiff re-alleges and incorporates hereby by reference each and every preceding paragraph as though fully set forth herein.

103.     In perpetrating the above-described acts, Defendants engaged in a pattern and practice of unlawful harassment based on Plaintiff's disability(ies) and/or the perception of his disability(ies).  More specifically, Defendants' unlawfully harassing conduct includes but is not limited to: isolation, assignment of menial, undesirable, and/or increasingly difficult tasks; unjustified criticism and reprimand; unjustified and unfounded negative performance evaluation; surveillance; ridicule and aggression; publication of private information; and more

104.     This harassment was sufficiently pervasive or severe as to alter the conditions of employment and create a hostile or abusive work environment. A reasonable person in the same circumstances would have considered the work environment to be hostile or abusive.  Plaintiff considered the work environment to be hostile or severe.

105.     Defendants, including Plaintiff's supervisors, participated, engaged, or assisted in such unlawful harassing conduct; Defendants were further aware of the conduct and took no option to prevent, remedy, or stop it.

106.     As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has suffered mental and emotional distress, and other foreseeable damages.

107.     Defendants' acts further entitle Plaintiff to a permanent injunction enjoining the Defendants from failing to provide a workplace free from unlawful harassment.

108.     Plaintiff requests attorney fees and costs against Defendants pursuant to California Government Code section 12965(b).

-17-

### TENTH CAUSE OF ACTION
**Failure to Pay Overtime Wages**
**Violation of the Fair Labor Standards Act**
**Against All Defendants**

109.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of this complaint as if fully set forth herein.

110.    At all times mentioned herein, pursuant to the Fair Labor Standards Act, Defendants were obligated to pay their employees, including Plaintiff, at one and one-half times the regular rate of pay for all hours worked beyond 40 in a week or eight (8) in a day. The regular rate of pay includes all remuneration from employment paid to, or on behalf of, the employee.

111.    At times mentioned herein, Defendants suffered or permitted Plaintiff to work more than eight (8) hours per day, more than 40 hours per week, without any overtime premium compensation for those hours worked.

112.    Defendants' failure to pay Plaintiff for hours worked, at any rate, violates 29 U.S.C. ¶ 207.

113.    Defendants' practice of requiring substantial overtime work from Plaintiff and not paying him at all for such work—even after Plaintiff's internal reports of non-payment—demonstrates bad faith intentional disregard of the law. Defendants and their agents knew or should have known of their obligations to pay Plaintiff overtime at one and one-half his regular rate of pay for all hours worked in excess of the applicable maximum weekly hours established by section 207 of the FLSA.

114.    Defendants failed to pay required compensation to Plaintiff directly and proximately caused Plaintiff to be deprived of his rightfully earned wages for all time worked.

115.    Defendants' violations herein occurred due to bad faith and with no reasonable grounds, and are willful and reckless violations of the FLSA.

116.    Plaintiff is entitled to and seeks restitution of unpaid wages, liquidated (double) damages, and prejudgment interest on unpaid amounts, as well as injunctive and declaratory relief.

-18-

117.     Plaintiff has incurred and will continue to incur attorneys' fees in the prosecution of this action and therefore is entitled to and demands reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**ELEVENTH CAUSE OF ACTION**
**Violation of Right to Privacy**
**Against All Defendants**

118.     Plaintiff incorporates by reference and re-alleges herein all preceding paragraphs of this complaint as if fully set forth herein.

119.     Pursuant to the protections of applicable law, Plaintiff at all times was and is entitled to and had a reasonable expectation of privacy in his personal health and medical information.

120.     Defendants by the acts described herein intentionally intruded into and/or disclosed Plaintiff's personal health and medical information.

121.     Defendants' intrusion would be highly offensive to a reasonable person and Plaintiff considered it to be highly offensive.

122.     As a direct, foreseeable, and proximate result of Defendant's wrongful acts, Plaintiff has suffered emotional distress resulting in general damages in an amount exceeding this court's minimum jurisdiction, to be determined according to proof at the time of trial.  Defendants' conduct was a substantial factor in causing Plaintiff's harm.

**PRAYER FOR RELIEF**

**Plaintiff requests judgment, as follows:**

A.     General damages in a sum according to proof, in excess of the minimum jurisdiction of this Court;

B.     Special damages in a sum according to proof;

C.     Restitution of unpaid wages and overtime premiums and interest thereon;

D.     Liquidated damages;

E.     Injunctive relief prohibiting Defendants from continuing to violate the law;

F.     Declaratory relief;

G.     Attorney fees and costs;

-19-

H.     Any other damages as allowed by law, or statutes not set out above, and such further relief as the Court deems just and proper at conclusion of trial.


### DEMAND FOR TRIAL BY JURY


Plaintiff CHRIS OPPENHEIMER hereby demands a trial by jury.


Date: February 27, 2024

By: _____
     Megan Beaman
     Curtis Davis
     Attorneys for Plaintiff Chris Oppenheimer

SECOND AMENDED COMPLAINT FOR DAMAGES

EXHIBIT A - 20

<u>PROOF OF SERVICE</u>

I declare that I am over the age of eighteen and am not a party to this action.  My business address is 77564 Country Club Dr. Suite 340, Palm Desert, CA 92211.

On February 27, 2024, I served the following document(s):

- **Second Amended Complaint**

On the following interested parties, as follows:

Liebert Cassidy Whitmore
A Professional Law Corporation
Marek Pienkos – mpienkos@lcwlegal.com
Elizabeth Arce – earce@lcwlegal.com
401 West A Street, Suite 1675
San Diego, CA 92101

Additional email: lclark@lcwlegal.com

( x )  I served the foregoing document(s) described above on the foregoing party(ies) in this action by electronic transmission or electronic service via the online court-filing service to the email address(es) listed above.

      Executed February 27, 2024, at Palm Desert, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Megan Beaman